**FAIR OCEAN COMPANY, LTD., Plaintiff,**

v.

**CARGO OF the PERMINA SAMUDRA XII, In Rem, and Perusahaan Pertambangan Minjak Dan Gas Bumi Negara, In Personam, Defendants,**

**Far East Oil Trading Co., Ltd., Claimant.**

Civ. No. 76–024.

United States District Court,
D. Guam.

Oct. 28, 1976.

Matthew Gruskin, Ferenz, Bramhall, Williams & Gruskin, Agana, Guam, Michael Marks Cohen, Burlingham, Underwood & Lord, New York City, for plaintiff.

Mark E. Cowan, Arriola & Cushnie, Agana, Guam, Stephen P. Kyne, Burke & Parsons, New York City, for defendants.

John C. Dierking, Agana, Guam, Bigham, Englar, Jones & Houston, New York City, D. Thomas McCune, Lillick, McHose & Charles, San Francisco, Cal., for claimant.

## MEMORANDUM OPINION

DUENAS, District Judge.

On June 17, 1976, plaintiff, Fair Ocean Company, Ltd., filed an in rem action against the cargo of the PERMINA SAMUDRA XII and an in personam action against PERUSAHAAN PERTAMBANGAN MINJAK DAN GAS BUMI NEGARA (hereinafter referred to as "PERTAMINA"). Plaintiff asserted as a basis for the action a maritime lien against defendant PERTAMINA. Plaintiff is the owner of the PERMINA SAMUDRA XII and on July 3, 1972 entered into a Tanker Time Charter Party Agreement with defendant by which defendant agreed to charter the PERMINA SAMUDRA XII for a period of 132 consecutive calendar months.

Plaintiff's maritime lien arises from the alleged nonpayment of charter hire payments by PERTAMINA. Plaintiff asserts a lien in the amount of $19,807,565.60. It is not controverted that on or about June 9, 1976, plaintiff withdrew the PERMINA SAMUDRA XII from PERTAMINA's service while the ship was at open sea and loaded with 53,273 long tons (or 384,000 bls.) of Sumatran Light Waxy Residue bound for Japan, and ordered the ship to Guam for the purpose of bringing this action.

Within the complaint, plaintiff demands that the Court order defendant to proceed to arbitrate this dispute pursuant to Paragraph 49 of the Charter Party Agreement and 9 U.S.C., Sec. 8.

On June 21, 1976, defendant appeared and asked this Court to dismiss the action on the ground of the doctrine of forum non conveniens. Claimants to the cargo in question, Far East Oil Trading Co., Ltd. (hereinafter referred to as "FEO") and Sumitomo Shoji Kaisha Ltd. (hereinafter referred to as "SUMITOMO") joined in defendant PERTAMINA's motion on June 29, 1976. SUMITOMO has since been dropped rather mysteriously from the pleadings in the case and the Court is not quite sure of its status.

The Court denied the motion on July 7, 1976.

On July 19, 1976, defendant PERTAMINA noticed a motion for reargument of its motion to dismiss on the doctrine of forum non conveniens and set the motion for reargument on August 6, 1976, a date when I was to be off-island on vacation and at which time the Honorable William H. Orrick, District Judge for the Northern District of California was to be sitting in my place. Plaintiff filed a cross-motion for Order of Sale of Cargo on August 3, 1976. Upon motion of defendant PERTAMINA, Judge Orrick continued all motions until I returned from vacation.

Claimant FEO filed a motion for order vacating the attachment of cargo on August 16, 1976. On September 8, 1976, the Court denied defendant PERTAMINA's motion for reargument and FEO's motion to vacate the attachment. FEO's motion was denied on the ground that an evidentiary hearing would have to be held to resolve a dispute as to the ownership of the cargo. The Court also granted plaintiff's motion for an interlocutory sale of the cargo, and ordered said sale to be held on September 22, 1976.

Said sale was stayed by order of the Ninth Circuit Court of Appeals on September 17, 1976 as a result of a petition for writ of mandamus filed by FEO. On September 27, 1976, the Court of Appeals vacated its order of September 17 and returned the matter to this Court for expedited consideration of a new order of sale as well as possible concurrent determination of the issues of cargo ownership and the lien rights thereto.

On October 1, 1976, this Court ordered that an evidentiary hearing be held on October 18, 1976 to determine the issue of ownership of the cargo vis a vis PERTAMINA and FEO. The Court also ordered, notwithstanding the hearing on October 18, a sale of the cargo for October 19, subject to the confirmation of the Court. Due to the failure and inability of PERTAMINA and FEO to comply with necessary discovery requests prior to October 18, 1976,

the Court adjourned the evidentiary hearing on October 15, 1976 and allowed the U.S. Marshal to proceed with the sale of the cargo on October 19, 1976. On October 18, 1976, defendant PERTAMINA arrested the PERMINA SAMUDRA XII pursuant to a warrant of arrest issued in the matter of *PERUSAHAAN PERTAMBANGAN MINJAK DAN GAS BUMI NEGARA (PERTAMINA) v. THE M. T. PERMINA SAMUDRA XII, her engines, tackle, etc.*, Civil Case No. 76–047. The companion case has been consolidated with this one by order entered on stipulation of counsel dated October 22, 1976. Present at the sale were counsel for plaintiff Fair Ocean, defendant PERTAMINA, and claimant FEO. Also present was Mr. S. Yamagata, Assistant Director of Sales for FEO. The sale had been properly noticed pursuant to the order of the Court. In fact, this was the second said notice of sale, the sale ordered for September 22 having also been noticed. The U.S. Marshal advertised the sale of October 19, 1976, on ten days notice in each of the following publications: (1) Pacific Daily News, (2) The New York Times, (3) The National Edition of The Wall Street Journal, and (4) The Journal of Commerce. The sole bid at the sale was the bid of $1.00 by plaintiff Fair Ocean. Said bid was accepted by the U.S. Marshal and the money was immediately paid and deposited in the registry of the Court.

On October 22, 1976, the Court held a hearing on plaintiff's motion to confirm the sale. PERTAMINA and FEO oppose the motion to confirm on the ground that the consideration is grossly inadequate. No party has contended that the procedure or notice of the sale was inadequate or unlawful.

The Court feels that it is important to note for the record certain facts. The plaintiff is a Liberian Corporation, the beneficial ownership of which is owned by Hong Kong Chinese principals. The Vessel Permina Samudra XII is registered in Panama and is owned by plaintiff. PERTAMINA is the nationally owned oil company of the Country of Indonesia. PERMINA

SAMUDRA XII and its cargo has been under arrest for more than 4½ months in Apra Harbor. The ship is moored to buoys in the harbor due to the lack of available pier space. Both FEO and PERTAMINA have answered the complaint in this case and neither party has denied the jurisdiction of this Court.

One of the major issues in this case is the relationship between PERTAMINA and FEO. Plaintiff asserts a lien on this cargo claiming that PERTAMINA is the title owner of this cargo and if it is not the title owner then at least it is the equitable owner. It cannot be said that PERTAMINA and FEO do not have considerable connections with each other. PERTAMINA owns 49.5% of the stock in FEO. The remainder of the stock is owned by 19 other companies and individuals all of which appear to be located in Japan. On March 11, 1968, PERTAMINA and FEO entered into a five-year contract whereby PERTAMINA agreed to provide large amounts of Sumatran Light Waxy Residue to FEO for a period of five years effective in 1971. On September 10, 1975, the contract was extended another five years, effective September 19, 1976. FEO contracted to buy the 384,000 bls. of oil from PERTAMINA at the agreed price of U.S. $12 a barrel or U.S. $4,608,000. It is undisputed that FEO has purchased U.S. $84,000,000 of identical cargo during the first six months of 1976 as well as more than U.S. $8,000,000 of identical cargo in September 1976. It also is admitted that after this action was filed and the cargo was arrested that PERTAMINA and FEO agreed in writing that FEO would not pay for the oil arrested in Guam until that oil arrived in Japan regardless of the length of time that may take. PERTAMINA also provided FEO with a substitute cargo. The fact remains that FEO has not paid for the cargo in question and continues to purchase identical cargo from PERTAMINA.

In ordinary circumstances, it would be expected that a claimant would post security and obtain the release of such a cargo especially if payment for the cargo had not been made. FEO has steadfastly main-

tained the position that it will not post a bond for the cargo and obtain its release but rather the Court should release the cargo to FEO on the ground that the cargo belongs to FEO. FEO has been requested by the Court to show what prejudice it would suffer if it were to post a bond for cargo for which payment has not been made and FEO has consistently responded that it need not post security to obtain the release of cargo for which it rightfully owns.

■ As the Court has previously indicated, this cargo has remained in Apra Harbor for almost five months. The cargo must be maintained at a relatively high temperature and there are no adequate storage facilities in Guam other than the ship in which to safely preserve this cargo. Plaintiff has advised the Court that the out-of-pocket expenses to maintain the vessel and thereby preserve the cargo in Guam amount to $4,143 daily. These expenses have been born by plaintiff since June 18, 1976. The Court takes judicial notice of the fact that Guam is situated in an area which is prone to a great number of serious typhoons. Supertyphoon Pamela hit Guam in May of this year leaving three ocean going freighters grounded in Apra Harbor, two tug boats grounded, two barges sunk and fifteen private yachts or sailboats destroyed. The Court also takes judicial notice that the month of November is the peak of typhoon season and that Typhoon Therese has already forced one emergency evacuation of the PERMINA SAMUDRA XII from the harbor.

The Court is most concerned with the environmental hazard caused by the presence of the PERMINA SAMUDRA XII in Apra Harbor as evidenced by a letter from the Captain of the Port, C. V. O'Neal, Commander, USCG, to Capt. Viru B. Phansalkar, Master of the PERMINA SAMUDRA XII. Commander O'Neal quotes in part:

"The T/V PERMINA SAMUDRA XII has been within Apra Harbor since 18 June 1976. During that period, the vessel has demonstrated that it can not maintain itself within the assigned anchorage grounds during adverse weather conditions. The vessel was transferred from the original mooring to the explosive anchorage buoy 701 in an effort to obtain a secure mooring at your request. During the first inclement weather, the vessel again failed to maintain itself with the anchorage and grounded. Its present anchorage is also considered inadequate for adverse weather conditions. The foregoing demonstrates that the T/V PERMINA SAMUDRA XII is unable to maintain a safe anchorage in Apra Harbor, Guam and therefore, is a clear threat to the safety of the port and other vessels. A large vessel such as the T/V PERMINA SAMUDRA XII when loaded with petroleum products presents a significant hazard to the environment. A major spill would cause catastrophic damage to the ecological systems in the harbor and the surrounding area. A prolonged presence of such a hazard is not acceptable."

■ FEO does not have cause to complain of the sale. In an answer to plaintiff's emergency cross-motion to vacate stay filed with the Court of Appeals on September 21, 1976, FEO complained that unless the sale of September 22, 1976 remain restrained, it would be unable to have representatives present and thus would have "no way of protecting itself from a distress sale if bids are otherwise inadequate." Based upon this representation and others, the Court of Appeals did not lift the stay on the sale until September 27. FEO appeared through counsel and its Assistant Director of Sales at the sale. FEO did nothing at the sale to protect itself, yet it had every opportunity to do so.

The Court has been made to believe that due to the special characteristics of this oil that Japan is the major if not the only market for the oil. The Court has had the opportunity to read parts of PERTAMINA's Reference Book which indicate that all Indonesian oil sold in the Japanese Market is sold through FEO. Certainly FEO is the most likely buyer of this cargo if not the only probable buyer.

FEO has complained that it would be unfair to confirm the sale before the Court and asks this Court to order another sale. Yet it offers no guarantee or even suggestion that if the Court set another sale within 30 days (the minimum time it would take to hold such sale) that the outcome would be any different. FEO makes no showing of willingness to purchase the oil itself or aid in locating a buyer.

The Court is of the opinion that it is in the best interest of the environment of the Territory of Guam and the safety of the cargo that the cargo be allowed to depart the Territory. The danger posed by the PERMINA SAMUDRA XII to Apra Harbor, the Commercial Port, the marine life, the shoreline, the beaches, and the inhabitants of Guam, and the defense establishments in and around the waters of Guam is too substantial and imminent to warrant the risk.

The Court is of the opinion that the best interests of all parties would best be protected if the vessel proceeded on its original voyage and discharged its cargo in Japan pursuant to appropriate security arrangements. Such arrangement would once again allow claimant and defendant an opportunity to protect their interests.

Based upon all prior proceedings had herein, and in the exercise of the Court's discretion and admiralty jurisdiction to supervise the sale of maritime property in custodia legis under Rule E(9) of the Federal Rules of Civil Procedure, and in the exercise of the Court's discretion and jurisdiction to protect the environment of the Territory of Guam under 28 U.S.C., § 1651, 33 U.S.C., § 1321(e) and § 1321(n), and Rule 83 of the Federal Rules of Civil Procedure, it is declared that the Court will confirm the sale of October 19, 1976 within 16 days of the entrance of the accompanying order unless FEO posts adequate and proper security in the amount of $4.5 million provided, that the plaintiff post adequate and proper security in the amount of $1.5 million in order to secure the release of the ship from the warrant of arrest in Civil Case No. 76–047 and assign to the Court for

the protection of defendant PERTAMINA and claimant FEO a minimum interest in the vessel's hull and machinery insurance equal to the first $5 million of proceeds payable upon total or constructive loss of the vessel and agree to deliver said cargo to FEO in Japan, and in the event defendant PERTAMINA so desires, agree to return the ship to Guam and be sold pursuant to Supplemental Rule E(9)(b). An order shall issue.

SO ORDERED.